IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VIRGINIA HURRELBRINK, #48022-177, § | | |
| Petitioner, § | | |
| § | | |
| v. § | CASE NO. 3:15-CV-3978-L-BK |
| § | (CRIMINAL NO. 3:14-CR-148-L-4) |
| UNITED STATES OF AMERICA, § | | |
| Respondent. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was automatically referred to the United States Magistrate Judge. Petitioner, a federal prisoner, filed a *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The Court subsequently appointed counsel and held an evidentiary hearing on the claim that defense counsel provided ineffective assistance by failing to file a requested notice of appeal. Upon review of the relevant pleadings and applicable law, it is recommended that the section 2255 motion be **DENIED**.

**I. BACKGROUND**

Pursuant to a plea agreement with an appellate-rights waiver, Petitioner pled guilty to a superseding information charging her with conspiracy to possess with intent to distribute a controlled substance and, in May 2015, was sentenced to 108 months' imprisonment and a four-year term of supervised release. Crim. Doc. 218. She did not file a direct appeal, and the Court subsequently denied her motion to reduce sentence under the 2014 Drug Guidelines Amendment because she had been sentenced pursuant to the amended Guidelines. Crim. Doc. 256.

In this timely section 2255 motion, Petitioner alleges defense counsel provided ineffective assistance by failing to file a notice of appeal despite her request to do so. Doc. 1 at 4. She also challenges the voluntariness of her guilty plea and asserts ineffective assistance of

counsel at sentencing.  Doc. 1 at 5-8.  After briefing was complete, Doc. 4, an evidentiary hearing was held on Petitioner's claim that defense counsel provided ineffective assistance by failing to file a notice of appeal despite her request to do so, and the parties filed post-hearing briefs on that issue as well.[1]  Doc. 16; Doc. 17; Doc. 18.  Thus, the motion to vacate sentence is now ripe for review.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted.  *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*)).  Under section 2255, a petitioner can collaterally challenge his conviction "only on issues of constitutional or jurisdictional magnitude."  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

### A. Ineffective Assistance of Counsel Standard

When a convicted defendant seeks habeas corpus relief on the ground of ineffective assistance of counsel, she must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court "held that the *Strickland* test applies to claims 'that counsel was constitutionally ineffective for failing

---

[1] Petitioner was represented by appointed counsel at the hearing and through the post-hearing briefing process.  Doc. 7.

to file a notice of appeal.'" *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam) (quoting *Flores-Ortega*, 528 U.S. at 477). The Court reaffirmed the well-settled rule that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega,* 528 U.S. at 477 (*citing Rodriquez v. United States,* 395 U.S. 327, 330 (1969)). In such a case, "prejudice will be presumed." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).

But even if the defendant does not instruct counsel to file an appeal, counsel has a constitutional duty to consult with the defendant about an appeal. *Flores-Ortega,* 528 U.S. at 480. Such a duty arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* As defined by the Supreme Court, the term "consult" conveys a specific meaning: "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id*. at 480.

When counsel breaches his constitutionally-imposed duty to consult, prejudice is not presumed and the "defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Id.* at 485. However, "[t]he defendant need not show 'that his hypothetical appeal might have had merit.'" *Bejarano*, 751 F.3d 285 (quoting *Flores-Ortega,* 528 U.S. at 486). This standard applies even in cases "where a defendant has waived the right to

3

appeal or collateral review." *Bejarano*, 751 F.3d 285 (quoting *Tapp,* 491 F.3d 263, 266).

### B. Counsel's Failure to File a Notice of Appeal (Claim 1)

The Court initially scheduled an evidentiary hearing to address Petitioner's first claim that defense counsel, Alfred Gilbertson ("Gilbertson"), provided ineffective assistance when he "failed to file a notice of appeal after sentencing when [Petitioner] asked about it," as alleged in the sworn section 2255 motion. Doc. 1 at 4. *See Flores-Ortega*, 528 U.S. at 477 ("a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). At the hearing, however, Petitioner offered no evidence that she had ever requested Gilbertson to appeal. Doc. 16 at 31-33. As a matter of fact, Petitioner's counsel acknowledged that "there's not going to be any evidence that she specifically explicitly asked Gilbertson to appeal." *Id.* at 32. Because Petitioner has abandoned her claim that she requested counsel to appeal, it should be denied.

The Court next addresses Petitioner's contention, raised for the first time at the evidentiary hearing, that counsel breached the constitutionally-imposed duty to consult with her about an appeal.[2]

---

[2] The *pro se* section 2255 motion did not assert that counsel failed in his obligation to adequately consult with Petitioner about appealing, and current counsel did not seek leave to amend the section 2255 motion to raise that claim. Doc. 1 at 4. Nevertheless, because *Flores-Ortega* requires that a court address whether counsel adequately consulted with a defendant about his right to appeal, even if the defendant did not specifically request one, the Court proceeds to address the claim. In this regard, the Court notes that the claim that counsel was ineffective in failing to consult with Petitioner about an appeal relates back to her initial claim that counsel failed to file a requested notice of appeal. *See United States v. Gonzalez,* 592 F.3d 675, 680 (5th Cir. 2009) (a "new" claim of ineffective assistance of counsel relates back to a prior ineffective assistance claim if it is "supported by facts that [do not] differ in both time and type from those the original pleading set forth.").

1. Evidentiary Hearing Testimony

At the evidentiary hearing held on September 13, 2016, Petitioner's trial counsel, Gilbertson, testified that, prior to the entry of the guilty plea, he had explained to Petitioner that she was "essentially [entering] an open plea . . . all open to the judge as to what she gets" – having waived her right to appeal for all purposes – and, thus, when the case reached the judge for sentencing, Petitioner would basically be "stuck" with the sentence and there was nothing that counsel could really do about it. Doc. 16 at 13-14. Gilbertson acknowledged that he counseled Petitioner regarding her appeal rights prior to the entry of the guilty plea and again in discussing the presentence report, a few months before sentencing. Doc. 16 at 8-9, 11.

He affirmed that he and the Petitioner "were both disappointed in the sentence" she received, Doc. 16 at 7, and that, after sentencing, they briefly exchanged a few words before Petitioner was escorted out of the courtroom:

> And then at the very end, as it's wrapped up, we had a few words at the very end to the effect, one, we both didn't like the sentence; two, that that was that. And she seemed to acknowledge in the context of what we'd already been discussing, which is it was a plea, it wasn't a trial. She'd waived the right of appeal. The sentencing guidelines are advisory, et cetera, et cetera, and that when the judge renders his verdict, as long as it's legal, in quotes, you're largely stuck with it. And so at the very end words to the effect of, you know, to heck with it, I guess that's that, that's what I got, and that was the end of it.

Doc. 16 at 8. Gilbertson, however, did not advise Petitioner after sentencing that she had a right to appeal the sentence, or discuss with her whether to appeal or any issues that could be raised on appeal. Doc. 16 at 8-9, 12.

In their brief discussion following sentencing, Gilbertson also related to Petitioner "we got everything we asked for, that makes it hard to complain, or words to that effect." Doc. 16 at 15. Indeed, as recounted at the evidentiary hearing, the only dissatisfaction with the sentence was that codefendant "Smith got essentially a benefit . . . of being able to be compared with Mr.

5

Barajas," another co-defendant, and that Petitioner "seemed to be denied that" opportunity. *Id.* Gilbertson testified that he explained to Petitioner:

> [W]ell, we got everything we asked for, but unfortunately we can't get less than somebody else just because they got too good of a deal, or words to that effect. And she seemed to acknowledge that and said, yeah, well, the -- you know, more or less, the heck with it, I got what I got, I guess I'm stuck with it. Or something. I don't recall the words, and I don't mean to say that there were any specific words, but that was the end of it, and that was the very end, at the -- the seconds after the sentencing or as it's wrapping up and she and I are whispering to each other. You know, that was that.

Doc. 16 at 15-16.

Gilbertson confirmed that Petitioner never stated that she wanted to file an appeal. Doc. 16 at 16. Gilbertson also testified that while Petitioner's family was equally disappointed and sad about the sentence, he did not recall any conversation (outside the courthouse shortly after sentencing) about appealing or doing something. Doc. 16 at 23-24. Gilbertson stated he did not hear from either Petitioner or her family in the ensuing weeks about wanting to file an appeal. Doc. 16 at 19. And while Petitioner's mother contacted Gilbertson a number of times to request that he mail copies of documents filed in the case to Petitioner, and continued to express disappointment in Petitioner's sentence, she never told Gilbertson that Petitioner wanted to appeal. Doc. 16 at 19-23.

### 2. Performance Prong

Petitioner contends counsel failed to adequately consult with her regarding an appeal after sentencing. Doc. 17 at 2. Specifically, she claims counsel had a duty to consult "regardless of whether Petitioner clearly communicated a desire to file an appeal," and that he "never properly advised her of her right to appeal, the right to counsel on appeal, and the relevant time frame to appeal." *Id.* Petitioner maintains that the duty to consult arose immediately after sentencing when "counsel and Petitioner discussed their mutual disappointment with the fact that

6

her sentence was comparatively more severe than that of her co-defendants, whom she and counsel considered to be more culpable." Doc. 17 at 5. She avers that counsel "was very much aware of Petitioner's dissatisfaction with her sentence." *Id.* Simply put, Petitioner argues that she reasonably demonstrated to counsel that she wanted to appeal by expressing her dissatisfaction with the sentence. The record does not bear that out, however.

Merely voicing disappointment or dissatisfaction with the sentence is insufficient to demonstrate a desire to file an appeal. *See United States v. Casarez*, 304 Fed. Appx. 325 (5th Cir. 2008) (holding that a defendant fails to reasonably demonstrate to counsel an interest in appealing simply because she "was upset about sentencing matters before and after the sentencing hearing"). A defendant must do more. In *United States v. Pham*, 722 F.3d 320, 324-326 (5th Cir. 2013), the United States Court of Appeals for the Fifth Circuit addressed whether a defendant's "post-sentencing statements and demeanor," "when viewed in context, was enough to trigger counsel's constitutional duty to consult with [the defendant] about an appeal." There, defense counsel knew that Pham "had hoped to receive a sentence of probation only," and "[w]hen that hope did not materialize, a visibly upset Pham 'brought up that he was concerned about getting 60 months [the mandatory minimum sentence] and wanted to do something to get less time.'" *Id.* Because this was "ample demonstration of Pham's interest in doing something to change the outcome of his sentencing through additional proceedings," the Fifth Circuit held that "the post-sentencing statement to counsel and his demeanor when uttering it" were enough to trigger counsel's constitutional duty to consult with Pham about an appeal. *Id.* at 326.

Here, Petitioner's reliance on Gilbertson's vague remarks that she was dissatisfied with her sentence, because it was not comparably lower than the one received by her co-defendants, is plainly insufficient to surmount a record that as a whole indicates no desire to appeal. First, right

7

after imposing the sentence, the District Judge advised Petitioner of her right to appeal and the time in which to file an appeal. *See* Sentencing Tr., Crim. Doc. 283 at 35. The Judge also informed Petitioner that if she could not afford an attorney for purposes of an appeal, that one would be provided to represent her on appeal. *Id.* Yet, despite being disappointed in the sentence, Petitioner's post-sentencing statements did not convey to counsel any interest in appealing or even exploring what if anything could be done after sentencing. *See Casarez*, 304 Fed. Appx. at 325 (counsel had no duty to consult when the defendant "was upset about sentencing matters before and after the sentencing hearing, [but] did not express to counsel any interest in appealing the sentence" in subsequent conversations). And unlike Pham, who "wanted to do something to get less time," *Pham*, 722 F.3d at 325, Petitioner, though generally expressing dissatisfaction, did not indicate a desire to take any action.

That Petitioner had succeeded on her sentencing challenges and received a sentence at the low end of the guideline range and her only dissatisfaction with her sentence was that it was not comparably lower than the one imposed on her co-defendants during the same sentencing hearing[3] is relevant only to put in context the subsequent conversations with counsel. As Gilbertson recounted at the evidentiary hearing, "we were both disappointed in the sentence." Doc. 16 at 7. And counsel's last exchange with Petitioner -- before she left the courtroom after sentencing – provides further context for her failure to indicate any desire to appeal:

> to the effect one, we both didn't like the sentence; two, that that was that. And she seemed to acknowledge in the context of what we'd already been discussing, which is it was a plea, it wasn't a trial. She'd waived the right of appeal. The sentencing guidelines are advisory, et cetera, et cetera, and that when the judge renders his verdict, as long as it's legal, in quotes, you're largely stuck with it. And so at the very end words to the effect of, you know, to heck with it, I guess that's that, that's what I got, and that was the end of it.

---

[3] Codefendants Smith and Barajas were sentence respectively to 132 and 140 months. Crim. Doc. 216; Crim. Doc. 210.

8

Doc. 16 at 8.

On this record, the Court credits Gilbertson's testimony that, during the brief conversation immediately following sentencing, Petitioner eventually accepted the 108-month sentence and, at no time, indicated to him that she wanted to pursue the issue further or inquired about what was next or what could be done about its purported unfairness. Doc. 16 at 16. Thus, as indicated previously herein, this case is crucially different from *Pham*, where the defendant expected to receive probation, was visibly upset about the 60-month sentence, and "wanted to do something to get less time." *Pham*, 722 F.3d at 325. Unlike *Pham*, there is no evidence in the record indicating that Petitioner was noticeably distressed about the 108-month sentence or desired to do anything to lower it. Moreover, Petitioner never even once tried to contact Gilbertson after sentencing to pursue or explore the sentencing issue further. Doc. 16 at 8. And while Petitioner's mother contacted counsel repeatedly after sentencing, she only indicated that Petitioner wanted a copy of her file, which counsel promptly mailed to her. Doc. 16 at 19, 21-22.

In addition, Petitioner waited seven months before filing this section 2255 motion. *See Bejarano*, 751 F.3d at 287 (waiting almost a full year after sentencing to file a section 2255 indicated the defendant "was unlikely to have" timely appealed). And, while she filed a motion to reduce sentence under the 2014 Drug Guidelines Amendment, within about four months of her sentencing, she did not mention either her desire to appeal or counsel's failure to file an appeal.

Petitioner suggests an analogy between this case and *Potts v. United States*, No. 3:11-CV-0357-B-BK, 2012 WL 1986866, at *13 (N.D. Tex. May 10, 2012), in which the undersigned credited the petitioner's testimony that he had asked defense counsel to file a notice of appeal. Doc. 17 at 4-5. However, *Potts* is dissimilar. First, unlike *Potts*, Petitioner neither testified nor

9

presented any evidence (as previously noted) that she had ever requested Gilbertson to appeal. Second, Petitioner's sole expression of dissatisfaction with her sentence stands in stark contrast to Potts' repeated requests to counsel (both before and after the revocation hearing) that he was dissatisfied with counsel's failure to pursue jurisdiction/sentence-stacking issues, which he had requested counsel to present and preserve for appeal. Thus, Potts, unlike Petitioner, had "made it abundantly clear to counsel that he wished to raise jurisdictional and sentence stacking issues and was, thus, dissatisfied with the outcome of his case," triggering counsel's duty to consult about appealing. *Potts*, 2012 WL 1986866, at *13. Consequently, in addressing the prejudice prong, this "Court ha[d] little trouble concluding that, if [counsel] had properly consulted with Petitioner about appealing, Petitioner would have expressed his desire to appeal to counsel." *Potts*, 2012 WL 1986866, at *14.

In conclusion, the Court finds that Petitioner did not reasonably demonstrate to Gilbertson an interest in appealing her sentence. Overall, the record reflects that Petitioner did not desire to appeal her sentence despite her apparent disappointment and dissatisfaction immediately after sentencing. As such, her post-sentencing remarks about the unfairness of her sentence, in and of themselves, did not reasonably demonstrate to counsel that she wanted to appeal, triggering counsel's duty to consult with her about pursuing an appeal. *Cf. Pham*, 722 F.3d at 325 (concluding that defendant's post-sentencing statement that he was visibly upset and concerned about his 60-month sentence and "wanted to do something to get less time" triggered counsel's duty to consult). Consequently, Petitioner has failed to satisfy the performance prong of *Strickland*.

### 3. Prejudice Prong

Similarly, Petitioner has failed to show prejudice under *Strickland*. In *Bejarano*, the Court of Appeals for the Fifth Circuit noted that the prejudice prong is satisfied if the Petitioner

establishes "'that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" *Bejarano*, 751 F.3d 280, 285 (quoting *Flores-Ortega*, 528 U.S. at 484). The Court explained "that '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

      Petitioner points to no evidence that she would have actually appealed, *but for* her counsel's failure to consult with her regarding an appeal. In the post-hearing brief, Petitioner merely states that she relied on counsel as an advocate, but that he never informed her of her appellate rights. Doc. 17 at 6. If he had, she asserts that she "would have filed an appeal." *Id.* Yet, the evidence presented at the evidentiary hearing shows no action or other fact to suggest a reasonable probability that Petitioner would have appealed. Indeed, as previously noted, Petitioner delayed seven months after sentencing before even filing this section 2255, which in and of itself fails to express a prompt desire to appeal. *See Flores-Ortega*, 528 U.S. at 485 ("promptly express[ing] a desire to appeal will often be highly relevant" in determining prejudice); *Bejarano*, 751 F.3d at 287 (noting that post-sentencing actions, such as waiting almost a full year after sentencing to file a section 2255 motion, "indicate [the defendant] was unlikely to have" timely appealed). Although, not required to demonstrate that an appeal would have been successful, Petitioner did not even suggest any non-frivolous ground for appeal she would have pursued if given the opportunity, either at the evidentiary hearing or in her post-hearing brief. *See Bejarano,* 751 F.3d 285 (noting that non-frivolous grounds for appeal may be relevant in assessing prejudice under *Strickland*).

      Additionally, as noted in *Bejarano*, "while 'a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal,' this 'evidence alone is insufficient

11

to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'" 751 F.3d at 286 (quoting *Flores-Ortega*, 528 U.S. at 486). The Fifth Circuit indicated that a defendant "must present more to succeed," *id.*, which Petitioner has plainly failed to do in this case.

In sum, Petitioner has not shown prejudice under *Strickland* and her claim of ineffective assistance of counsel fails.

### C. Remaining Claims

#### 1. Voluntariness of Guilty Plea (Claim 4)

##### i. Procedural Default

Petitioner challenges the voluntariness of her plea. She asserts she "plead[ed] guilty without knowing the consequences of the plea." Doc. 1 at 8. Having failed to raise this claim on direct appeal, the Court agrees with the Government that it is procedurally defaulted, absent a showing of cause and prejudice or that the petitioner is "actually innocent" of the crime for which she was convicted. *See United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (*citing United States v. Frady*, 456 U.S. 152, 168 (1982)); *Bousley v. United States,* 523 U.S. 614, 621 (1998) (voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review).

Petitioner does not satisfy the cause-and-actual prejudice exception to excuse her failure to raise this claim on direct appeal. She asserts defense counsel failed to file an appeal as Petitioner requested. Doc. 1 at 8. Even assuming that cause exists to excuse the procedural default, Petitioner does not demonstrate that she will suffer actual prejudice because she fails to establish a meritorious claim as discussed more fully below. Likewise, she has not shown that she is actually innocent.

### ii. Lacks merit

Petitioner asserts that she "plead[ed] guilty without knowing the consequences of the plea." Doc. 1 at 8. Yet she fails to offer any reason for her assertions.

A guilty plea must be knowingly, voluntarily, and intelligently made to be constitutionally valid. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against her; (2) understood the constitutional protections she was waiving; and (3) had access to competent counsel. *United States v. Washington,* 480 F.3d 309, 315 (5th Cir. 2007).

A defendant ordinarily may not refute her sworn testimony given at a plea hearing while under oath. *Cervantes,* 132 F.3d at 1110. Declarations made under oath in open court carry a strong presumption of truth, forming a formidable barrier to relief in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977). A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

Here, the only conclusion supported by the record is that Petitioner's guilty plea was knowing and voluntary. During the Rule 11 hearing, Petitioner assured the Court under oath that she understood the essential elements and admitted committing each of them. *See* Rearraignment Tr., Crim. Doc. 282 at 12. She confirmed that (1) she had reviewed the plea agreement with counsel, that he understood all of its provisions -- including waiver of his right to appeal and to seek collateral relief; (2) no one had made any promises to cause her to enter into

the plea agreement; and (3) she was pleading guilty freely and voluntarily. Crim. Doc. 282 at 12-14. In addition, Petitioner confirmed that she had reviewed the factual resume before signing it, and she agreed the stipulated facts were true. Crim. Doc. 282 at 18. She averred that she was fully satisfied with her counsel's advice. Crim. Doc. 282 at 9. Petitioner also understood her constitutional rights and that only the Court would determine and assess the sentence *after* considering the Presentence Report (PSR) and consulting the Sentencing Guidelines. Crim. Doc. 282 at 6-7. Moreover, Petitioner had abundant time after the entry of her guilty plea and through sentencing, more than six and one-half months later, to advise the Court that her guilty plea was involuntary and coerced, and/or that she was dissatisfied with defense counsel's conduct. Yet, at sentencing, Petitioner voiced no objection or concerns about her plea or counsel's advice or his allegedly deficient performance. Crim. Doc. 283.

Thus, the record of this case, including Petitioner's sworn testimony at her re-arraignment hearing, clearly establish that Petitioner was fully competent and capable of entering an informed guilty plea, that her plea was knowing and voluntary and supported by an independent factual basis, and that Petitioner understood fully that she was waiving her right to appeal and to seek collateral relief under section 2255. Accordingly, Petitioner's claim challenging the voluntariness of her guilty plea fail.

### 2. Ineffective Assistance of Counsel at Sentencing (Claims 2 & 3)

As the Government correctly notes, Petitioner's ineffective assistance of counsel claims are conclusory and should be summarily dismissed. Petitioner's bare assertions in her section 2255 motion that "defense counsel failed to challenge the quantity and purity of the stated drug, as well as the amount attributed to the defendant," and that he "failed to argue for the safety valve," are clearly vague and insufficient to plead a Sixth Amendment claim. *See United States*

*v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (declining to consider vague ineffective assistance of counsel claim). Without any specific allegation explaining what counsel did or failed to do, Petitioner cannot raise an issue of constitutional import. Indeed, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Pineda*, 988 F.2d at 23 (quotations and quoted case omitted); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). Nevertheless, each of the ostensible claims fails on the merits.

To the extent that Petitioner claims that counsel failed to challenge the purity of the drugs, the PSR confirms that the methamphetamine seized from her home at the time of her arrest was analyzed and the test results revealed that 26.21 grams had 95.8 percent purity and that 3.02 grams had 98 percent purity. Crim. Doc. 120-1 at 8-9, PSR ¶¶ 29, 35. Likewise, insofar as Petitioner maintains counsel failed to challenge the quantity of the drugs, she is responsible for all foreseeable acts committed by the co-defendants. *See* Crim. Doc. 120-1 at 9, PSR ¶¶ 38, 40-41 (noting Petitioner was involved in a jointly undertaken criminal conspiracy with co-defendants Barajas and Smith to distribute methamphetamine); *see also* Factual Resume, Crim. Doc. 64 at 2-3. In addition, contrary to Petitioner's assertion, she did not qualify for the "safety valve" provision under U.S.S.G. § 5C1.2, which allows a qualified defendant to escape a statutory minimum sentence. Notably, the Guideline imprisonment range of 108-135 months [*see* Crim. Doc. 283 at 19] was higher than the 60-month statutory minimum sentence [Crim. Doc. 120-1 at 19, PSR ¶ 103] and, thus, § 5C1.2 did not apply. *See United States v. Solis*, 169 F.3d 224, 226 (5th Cir. 1999) ("Safety valve" provision of Sentencing Guidelines does not apply where the guideline range is higher than the statutory minimum). Therefore, any objection based

15

on the quantity/purity of the drugs attributed to her or the applicability of the "safety valve" provision would have been meritless. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (counsel is not ineffective for failing to raise a frivolous objection); *United States v. Lewis*, 467 Fed. Appx. 298, 299 (5th Cir. 2012) (per curiam) (citing *United States v. Villegas-Rodriguez*, 171 F.3d 224, 230 (5th Cir. 1999) (same as to meritless guideline objection).

Petitioner has failed to demonstrate that counsel's performance was deficient or that she was prejudiced. Accordingly, Petitioner's claims of ineffective assistance of counsel at sentencing fail.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the motion to vacate sentence under 28 U.S.C. § 2255 be **DENIED**.

**SIGNED** March 27, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 *(5th Cir. 1996).*

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE